UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| JOSEPH STONE, ) | |
| ) | |
| Movant, ) | |
| ) | |
| vs. ) | Case No. 4:11CV00377 SNLJ |
| ) | |
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Respondent. ) | |

**<u>MEMORANDUM AND ORDER</u>**

This case is a motion under 28 U. S. C. § 2255 to vacate, set aside or correct sentence by Joseph Stone, a person in federal custody. On March 12, 2009, Stone plead guilty before this Court to the offense of Conspiracy to Possess Pseudoephedrine with the Intent to Manufacture Methamphetamine, Conspiracy to Manufacture Methamphetamine and Conspiracy to Manufacture Methamphetamine which Created a Substantial Risk of Harm to Human Life, and on September 25, 2009, this Court sentenced Stone to the Bureau of Prisons for a term of 235 months, a sentence within the sentencing guideline range. Stone's § 2255 action is fully briefed and ripe for disposition. USA v. Joseph Stone, Case No. 4:08CR321-SNLJ.

**I.  FACTS**

In the early part of 2008, detectives from the St. John Police Department and Woodson Terrace Police Department began an investigation into the purchase of pseudoephedrine from Walgreens Pharmacy. PSR ¶ 12. It was determined through review of Walgreens pharmacy pseudoephedrine transaction logs that Lisa Stone and Joseph Stone had purchased large quantities of pseudoephedrine. PSR ¶ 12. Detectives obtained pharmacy records from Wal-Mart, Global Life, and Rehobooth pharmacies. PSR ¶ 12 Pharmacy records detailed that Joseph Stone

had purchased approximately 210 grams of pseudoephedrine pills on multiple dates including January 22, 2008 and April 2, 2008. See Transcript of Plea and Sentencing Hearing (Plea & Sent. Tr. p. 11, lines 10-11) Based upon this information, detectives seized trash from the home of Joseph and Lisa Stone located at 8714 David in St. John, Missouri, located in the Eastern District of Missouri. (Plea & Sent. Tr. p. 11, lines 11-14) Examination of the contents of the trash revealed that there were multiple items commonly associated with the clandestine manufacture of methamphetamine. (Plea & Sent. Tr. p. 11, lines 15-17)

On April 8, 2008, detectives responded back to 8714 David and were granted consent to search the residence by the defendant's wife Lisa Stone. (Plea & Sent. Tr. p. 11, lines 18-20) Upon entering the home, the detectives immediately detected a noxious odor associated with the production of methamphetamine. (Plea & Sent. Tr. p. 11, lines 20-23) Also present within the residence was minor child B.S., age three. (Plea & Sent. Tr. p. 11, lines 24-25) Search of the residence resulted in finding an active methamphetamine lab located in the basement of the residence. In addition to the lab located in the basement, suspected methamphetamine was located in the family refrigerator. (Plea & Sent. Tr. p. 12, lines 3-5)

Detectives learned during the interview of the defendant's wife, that the couple's minor son "B.S.", age three, was living at the home where methamphetamine was being manufactured and further advised detectives that "B.S." had been suffering breathing related illnesses. (Plea & Sent. Tr. p. 12, lines 5-9) Lisa Stone stated that she had been making multiple purchases of pseudoephedrine to be used in the production of methamphetamine and would give it to Joseph Stone who would cook methamphetamine in the basement. (Plea & Sent. Tr. p. 12, lines 10-14)  In addition, she admitted assisting the defendant in the manufacture of

methamphetamine by scraping matchbooks to obtain red phosphorous, and "popping" pseudoephedrine tablets from the blister packs. (Plea & Sent. Tr. p. 12, lines 15-18)

On April 8, 2008, Joseph Stone was interviewed at the St. Louis County Jail. (Plea & Sent. Tr. p. 12, lines 19-21) The defendant informed detectives that he purchased pseudoephedrine pills at multiple pharmacies in the St. Louis area that were ultimately used in the manufacture of methamphetamine. (Plea & Sent. Tr. p. 12, lines 21-24) He confirmed that the trash seized from his home was trash related to the manufacture of methamphetamine. (Plea & Sent. Tr. p. 12, line 25, & p. 13, line 1)

On May 22, 2008, Joseph Stone was indicted for conspiracy to possess pseudoephedrine knowing and having reasonable cause to believe it would be used to manufacture methamphetamine, conspiracy to manufacture methamphetamine, creating a substantial risk of harm to human life while knowingly manufacturing methamphetamine, knowingly manufacturing methamphetamine on premises where an individual under the age of eighteen resided, manufacturing methamphetamine, and two counts of possession of pseudoephedrine knowing it would be used to manufacture methamphetamine. (Doc. 2, Indictment)

On June 3, 2009, Stone entered a plea of guilty to counts one, two, three, five, six, and seven of the indictment. (Plea & Sent. Tr. pages 13-17 ) In exchange for his plea of guilty and waiver of the defendant's right to appeal multiple issues except the actual sentence received, the government agreed to dismiss count four of the indictment. (Plea & Sent. Tr. p. 7, lines 7-12) Count four charged the defendant with manufacturing methamphetamine upon premises in which a child under age eighteen resided pursuant to 21 U.S.C. § 860a. According to the language of the statue and accompanying charge that was dismissed, the penalty called for a

mandatory consecutive sentence. *See* 21 U.S.C. § 860a.

At the June 3, 2009 plea hearing the defendant was advised on multiple occasions throughout the proceeding that the court was not bound to follow the guidelines in crafting an appropriate sentence. (Plea and Sent. Tr. p.8 lines 2-12; Plea and Sent. Tr. p.10 lines 5-7) The court stated the following to the defendant:

> The Court: And after your plea of guilty, I'll get with the probation officer and we will recalculate the sentencing guidelines, so my point is I'm not going to be bound by what they have put in this presentence report.
>
> Mr. Stone: Yes, sir, I do.
>
> The Court: And, further, the guidelines are simply guidelines and the Court will not be bound by those guidelines in imposing a sentence against you but instead I will be bound by the s  tatutory range of punishment for each of the offenses involved here.  (Plea & Sent. Tr. P.10 lines 5-7)

Again, later in the same proceeding, the court noted the following:

> The Court: Now I mention to you that I'm not going to be bound by the sentencing guidelines but I am going to be bound by this range of punishment.... (Plea & Sent. Tr. P. 10 lines 5-7)

A Presentence Investigation Report ("PSR") was prepared by the United States Probation office. The base offense level was calculated at 32 due to the amount of pseudoephedrine involved in the case. Six levels were added pursuant to § 2D1.1(b)(10) because the offense involved the manufacture of methamphetamine which created a substantial risk of harm to human life. PSR ¶ 23. Three levels were deducted from the offense level, placing Stone's total offense level at 35. PSR ¶ 31. The PSR detailed Stone's prior criminal history which included thirteen prior felony convictions in nine separate cases dating back to 1990. PSR ¶ 34-73.

Accordingly Stone's criminal history category was level four. The total offense level for Stone was thirty five. PSR ¶ 29. The advisory guideline range of imprisonment was calculated at 235 to 293 months imprisonment. PSR ¶ 109.

Prior to sentencing, Stone filed a sentencing memorandum. The sentencing memorandum elaborated upon his criminal history, institutional drug treatment mandated by order of the St. Louis County Circuit Court, and family history. (Doc. 67). The memorandum contained no objections regarding the information contained in the presentence report. (Doc. 67).

On September 25, 2009,Stone appeared for sentencing. (Plea & Sent. Tr. p. 1) Counsel for Stone made no objections to the content of the presentence report, nor the calculations regarding Stone's offense level or criminal history. (Plea & Sent. Tr. p.24 lines 15- 19) This Court noted that it had reviewed Stone's sentencing memorandum, including all attachments (Plea & Sent. Tr. p. 25, lines 7-8; *see also* p. 26, lines 1-5) Counsel for Stone made several arguments to the Court, including a request for a sentence below the advisory guidelines range. (Plea & Sent. Tr. pages 31-33) Referenced in the sentencing memorandum was Stone's incarceration in the Missouri Department of Corrections for possession of a controlled substance for events that occurred on June 14, 2004. PSR ¶ 73. In pronouncing sentence upon Stone, this Court noted that it had considered factors pursuant to Title 18 U.S.C. 3553(a). (Plea & Sent. Tr. p. 34, lines 9-19) Further, prior to imposing sentence, this Court stated the following:

> The Court:   What I'm concerned about, though, is the fact that you've been to prison three times. You put your son at risk on this – during this matter. You involved your wife in it and she's going to prison, too, later on today and you did all of this while you were already on probation and so at that point – I don't know how much leniency I can really give you in clear conscience. I'm impressed that you've secured drug

> treatment and that you've been successful with it later and I also believe that you're genuinely remorseful but at the same time, you know, it's time to pay your debt to society. (Plea & Sent. Tr. p.33 lines 23-35, and p. 34 lines 1-8)

This Court then sentenced the defendant to a term of 235 months imprisonment as to counts one, two, five, and seven, and a term of 120 months as to count three, all counts to run concurrent. (Plea and Sent. Tr. p. 34 lines 9-19) No objections were made by counsel throughout the entire sentencing hearing, nor were any filed with the Court.

## II.  PROCEDURAL HISTORY

Movant is presently incarcerated at the Federal Correction Center in Big Spring, Texas pursuant to the judgment and sentence of this Court. On May 22, 2008, a federal grand jury returned a nine count indictment against Movant and one other individual. Movant was named in counts one through seven of the indictment. In count one, Movant was charged with conspiracy to possess pseudoephedrine knowing it would be used to manufacture methamphetamine, count two with conspiracy to manufacture methamphetamine, count three with conspiracy to create a substantial risk of harm to human life while knowingly manufacturing methamphetamine, count four conspiracy to manufacture methamphetamine on premises where a child under 18 years of age resided, count five with manufacturing methamphetamine, count six and seven with possession of pseudoephedrine knowing it would be used to manufacture methamphetamine.

On June 3, 2009 Movant entered a plea of guilty to counts one, two, three, five, and seven of the indictment and signed a "Plea Agreement, Guidelines Recommendations, and Stipulations." On September 25, 2009, this Court sentenced Movant to a term of 235 months incarceration. The term of imprisonment consisting of a term of 235 months as to counts one,

-6-

two, five, six, and seven. Movant was sentenced to a term of 120 months as to count three to be served concurrent with all other counts.

Movant appealed his conviction and sentence to the Eighth Circuit Court of Appeals. Following briefing by the parties, the appellate court entered its judgment on May 10, 2010 affirming the sentence of the district court. Movant did not file a petition for writ of certiorari to the Supreme Court of the United States and the judgment became final on June 2, 2010.

On February 23, 2011, this Court received Movant's § 2255 motion for post-conviction relief. The motion was timely filed. For the reasons set forth below, this Court has determined that the grounds raised in Movant's motion are without merit, are refuted by the record, and should be denied. Stone has failed to show that he was deprived of effective assistance of counsel in that defense counsel's performance did not fall below an objective standard of reasonableness and, equally significant, Movant has not shown prejudice as a result of defense counsel's performance.

### III. DISCUSSION

**APPLICABLE LEGAL STANDARDS.**

**A.    Movant's Claims**

Movant alleges four separate reasons as to why he is entitled to relief pursuant to § 2255, all of which are either refuted by the record or fall within the wide range of reasonable professional assistance. Movant first alleges that counsel failed to object to facts within the PSR, failed to review the PSR, and failed to seek a departure pursuant to § 5K1.1 of the United States Sentencing Guidelines. Second, Movant alleges that counsel failed to object to § 2D1.1 of the United States Sentencing Guidelines in that the guideline was promulgated to target

major and serious drug traffickers. Third, Movant alleges that counsel failed to argue that the methamphetamine guideline is fundamentally flawed in that increased offense levels are a product of congressional directive and do not follow an empirical approach to sentencing. And finally, Movant alleges that counsel failed to object to facts that resulted in an increased offense level due to Movant's manufacture of methamphetamine in a home where a child was present which created as substantial risk of harm and created an unwarranted sentencing disparity.

**B.    § 2255 Standards**

Pursuant to 28 U.S.C. § 2255, a federal prisoner may seek relief on the ground that "the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack...." 28 U.S.C. § 2255. Claims based on a federal statute or rule, rather than on a specific constitutional guarantee, can be raised "on collateral review only if the alleged error constituted a 'fundamental defect which inherently results in a complete miscarriage of justice.'" *Reed v. Farley*, 512 U.S. 339, 354 (1994).

The Court must hold an evidentiary hearing to consider claims in a § 2255 motion "'[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief.'" *Shaw v. United States*, 24 F.3d 1040, 1043 (8th Cir.1994) (quoting 28 U.S.C. § 2255). Thus, a movant is entitled to an evidentiary hearing "'when the facts alleged, if true, would entitle him to relief.'" *Payne v. United States*, 78 F.3d 343, 347 (8th Cir.1996) (quoting *Wade v. Armontrout*, 798 F.2d 304, 306 (8th Cir.1986)). The Court may dismiss a claim "'without an evidentiary hearing if the claim is inadequate on its face or if the record

affirmatively refutes the factual assertions upon which it is based.'" *Shaw*, 24 F.3d at 1043. Self-serving and conclusory statements "will not suffice to command a hearing." *Engelen v. United States*, 68 F.3d 238, 240-41 (8th Cir.1995). Stated another way, Stone must present some credible, nonconclusory evidence that he would not have pled guilty if he had been properly advised by his counsel. *See, Sanders v. United States*, 341 F.3d 720, 722 (8th Cir.2003).

Stone's claims must be evaluated in light of the fact that he entered a guilty plea. Although a guilty plea in open court is not impervious to collateral attack, the rule is that "a defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Pennington v. United States*, 374 F.Supp.2d 813, 815 (E.D.Mo.2005). Thus, Stone has a heavy burden to overcome his admissions at the plea hearing and show that his plea was involuntary. *Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir.1997).

      **C.**      **Ineffective Assistance of Counsel Standards**

A movant "faces a heavy burden" to establish ineffective assistance of counsel pursuant to § 2255. *DeRoo v. United States*, 223 F.3d 919, 925 (8th Cir. 2000). To succeed on an ineffective assistance of counsel claim, a movant must show that counsel's performance was deficient and that the deficient performance prejudiced the movant's case. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *United States v. Sera*, 267 F.3d 872, 874 (8th Cir. 2001); DeRoo, 223 F.3d at 925.

An attorney's performance is deficient if it falls "below an objective standard of reasonableness." *Strickland*, at 687-88; *Sera*, 267 F.3d at 874. There are two substantial impediments to making such a showing. First, there is a "strong presumption that counsel's

conduct falls within the wide range of reasonable professional assistance." *United States v. Rice*, 449 F.3d 887, 897 (8th Cir. 2006) (quoting *Strickland*, 466 U.S. at 689); *Sera*, 267 F.3d at 874. *See also, Ford v. Lockhart*, 905 F.2d 458, 462 (8th Cir. 1990) (evaluation of a claim of ineffective assistance of counsel is highly deferential with a strong presumption that counsel acted competently). Second, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897 (quoting *Strickland*, 466 U.S. at 690). When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.

In addition to proving a deficiency in counsel's performance, the movant must also prove that "any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution." *Strickland*, 466 U.S. at 692. The burden is on the movant to prove, by a preponderance of the evidence, that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id*. at 694; *DeRoo*, 223 F.3d at 925.

A court need not even determine whether a movant meets the "performance" prong of the *Strickland* test. "'If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.'" *Young v. Bowersox*, 161 F.3d 1159, 1160 (8th Cir. 1998) (quoting *Strickland*, 466 U.S. at 697), *cert. denied*, 528 U.S. 880 (1998). See also *Kingsberry v. United States*, 202 F.3d 1030, 1032 (8th Cir.) (if the petitioner makes an insufficient showing on one component, the court need not

address both components), *cert. denied*, 531 U.S. 829 (2000).

In the instant cause there is not only no claim of any alleged error on the part of counsel, there is no showing of any resulting prejudice. Movant is unable to meet either the "performance" prong or the "prejudice" prong of the *Strickland* analysis with respect to his claim of ineffective assistance of trial counsel. Consequently, this Court will deny Movant's motion for postconviction relief.

### IV. CLAIM ONE

Movant's first claim that counsel failed to object to facts, review the PSR (presentence report) and failed to seek a departure pursuant to § 5K1.1 of the United States Sentencing Guidelines is both refuted by the record and constituted strategic choices by counsel after review of the law and facts in Movant's case. Evaluation of a claim of ineffective assistance of counsel is highly deferential with a strong presumption that counsel acted competently. *Lockhart*, at 462. "Strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, at 897.

First relative to Movant's initial claim, counsel did in fact review the PSR with Movant as the record from the sentencing hearing clearly shows.

> The Court: Now I have received a presentence investigation report from the probation officer. Have you received a copy of that report and have you reviewed it in detail with your lawyer?
>
> Mr. Stone: Yes, sir.

Based upon this exchange in court, it is clear that counsel and Movant reviewed the PSR. Further, counsel makes specific reference to a paragraph of the PSR during the sentencing, indicating that counsel reviewed the PSR. Plea & Sent. Tr. p. 31.

Also contained within Movant's first claim is that counsel failed to object to the PSR or seek a departure pursuant to § 5K. As Movant entered into a plea agreement with the government for the dismissal of count four, counsel acted consistent with the plea agreement in not objecting to the facts in the PSR. Count four of the indictment charged Movant with conspiracy to knowingly and intentionally manufacture a mixture or substance containing methamphetamine on premises in which an individual under the age of eighteen years resided, in violation of Title 21, United States Code, Section 860A. This charge carried with it, a mandatory consecutive sentence, in addition to sentences to be imposed on other charges. The applicable guideline range would have been based upon drug quantities, and by statute, is specified to run consecutive. Title 21 United States Code, Section 860a.  As such, by agreement between the parties, there were no objections to the PSR. When reviewing counsel's performance, a court must avoid using "the distorting effects of hindsight" and must evaluate the reasonableness of counsel's conduct "from counsel's perspective at the time." *Strickland*, 466 U.S. 689.

Movant also alleges that counsel failed to request a "5K" departure. A motion for downward departure can only be filed by the government if Movant has satisfied the provisions of § 5K1.1 of the United States Sentencing Guidelines. Specifically, a motion for downward departure pursuant to § 5K1.1 can only be filed "Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense." U.S.S.G. §5K1.1 Here, the defendant never gave information to the government that assisted in the prosecution of another person who has committed an offense. As such, the government never contemplated filing a motion for downward departure pursuant to § 5K1.1, as there was no basis in fact to support the filing of the

motion. "When reviewing counsel's performance, the court does not ask whether counsel's decisions were correct or wise, but only whether counsel's decisions were unreasonable." *United States v. Flynn*, 87 F.3d 996, 1001 As such, counsel for Movant did not make the request for a downward departure as there was no basis in fact for such a request. Counsel's performance, in not requesting a downward departure falls within the wide range of reasonable professional assistance.

In addition to failing to establish the first prong of the *Strickland* analysis, Movant also fails to establish prejudice. In order to establish prejudice, Movant must establish that he would have received a lesser sentence but for counsel's ineffective representations. *King v. United States*, 595 F.3d 844, 852 (8th Cir. 2010) Movant cannot show that he would have received a lesser sentence in this case. In fact, due to counsel's advice and negotiation, Movant received a much lower sentence in that Count Four was dismissed, which carried a mandatory consecutive term of imprisonment pursuant to Title 21 U.S.C. 860A.

Movant is unable to establish that counsel's representation was constitutionally infirm. Moreover, Movant cannot establish that he was prejudiced by counsel's representation, therefore movant's first claim shall be denied.

## V. CLAIM TWO

Movant's second claim is that counsel failed to argue that § 2D1.1 was promulgated to target major and serious drug traffickers. Again, "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Rice*, 449 F.3d at 897**.** Here, Movant challenges the United States Sentencing Guidelines, alleging with no basis in law or fact that § 2D1.1 was intended for major and serious drug traffickers. Nothing

contained within the section of the guidelines supports Movant's claim.

In assessing the arguments of Movant's counsel, it is clear that the arguments made at sentencing were consistent with Movant's claim in his petition. At sentencing, counsel argued that Movant was an addict, that he had a tumultuous childhood, that he'd received punishment, and made a request for a sentence below the advisory guidelines range. Plea & Sent. Tr. pp. 26-33**.** Further, counsel for Movant filed a Sentencing Memorandum for consideration by this court, elaborating upon arguments made at sentencing. Doc. 67. Though not specifically questioning the intent of § 2D1.1 of the United States Sentencing Guidelines, counsel for Movant made arguments consistent with his second claim.

At sentencing, this court acknowledged that the guidelines were advisory, applied them consistent with other courts, and despite arguments of Movant, has demonstrated no prejudice by counsel's failure to make an argument regarding the intent of § 2D1.1. Movant fails to establish that counsel's performance was constitutionally infirm, nor that he suffered prejudice as a result of not making the argument.

## VI.   CLAIM THREE

Counsel was not ineffective for not arguing that the methamphetamine sentencing guideline was fundamentally flawed, nor did Movant suffer prejudice by counsel not making the argument. Movant calls into question why counsel did not argue or question that the United States Sentencing Guidelines were fundamentally flawed and attempts to delve into the congressional intent of the guidelines for methamphetamine. The permissible scope of a § 2255 collateral attack on a final conviction or sentence is severely limited; "an error of law does not provide a basis for collateral attack unless the claimed error constituted a fundamental defect

which inherently results in a complete miscarriage of justice'". *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) Basically, Movant questions why counsel did not make arguments regarding the application of the guidelines and that they are defective. "Ordinary questions of guideline interpretation falling short of the miscarriage of justice standard do not present a proper claim." *Sun Bear* at 704.

In any event, the claim that Movant alleges his counsel should have made would have been manifestly meritless. Movant does not provide any specific information as to the nature of the "fundamental flaw" of the Guidelines that he supposes his counsel should have raised. In any event, blanket challenges to the sentencing guidelines are routinely rejected. Movant's counsel was not constitutionally ineffective for failing to raise a meritless claim.

### VII.   CLAIM FOUR

The failure to object to the addition of six levels to the offense level pursuant to § 2D1.1(b)(10)(D) fell within the broad range of reasonable professional assistance and Movant suffered no prejudice. In the underlying case, Movant agreed by plea agreement to the addition of six additional levels to the offense level in exchange for the dismissal of Count Four of the indictment, the ability to request a below guideline sentence, and the right to appeal the conviction.

At the plea colloquy, Movant admitted not only to manufacturing methamphetamine in the house where his minor child under the age of eighteen resided, but that also that the child suffered breathing illnesses while the child was an occupant in the home of the clandestine methamphetamine laboratory. Count Four, as previously stated, charged Movant with knowingly manufacturing methamphetamine in a home in which a child under the age of eighteen was a

resident, in violation of Title 21 U.S.C. 860A. Again, this charge carried with it, at mandatory consecutive term of imprisonment, in addition to penalties imposed on the other counts. The analysis under the guidelines relative to the total offense level on Count Four is contained in § 2D1.1(b)(10)(C)(i). The provision provides that if "the defendant is convicted under 21 U.S.C. 860a of manufacturing, or possessing with the intent to manufacture, methamphetamine on premises where a minor is present or resides;" the offense level should be 27. Further, this penalty shall be run consecutive to the other charges, as is specified in the statute. As Stone's criminal history category was level four, the total offense level on the charge that was dismissed per the plea agreement is estimated at 77-96 months imprisonment, granting him three levels off for acceptance of responsibility.

      Movant and counsel agreed to the addition of six additional levels as "the offense involved the manufacture of amphetamine or methamphetamine; and (ii) created a substantial risk of harm to the life of a minor". Movant's base offense level was calculated at 32 due to the amount of pseudoephedrine involved in the case. Six levels were added pursuant to § 2D1.1(b)(10) because the offense involved the manufacture of methamphetamine which created a substantial risk of harm to human life. PSR ¶ 23. Three levels were deducted from the offense level, placing Stone's total offense level at 35. PSR ¶ 31. The PSR detailed Stone's prior criminal history which included thirteen prior felony convictions in nine separate cases dating back to 1990. PSR ¶ 34-73. Accordingly Stone's criminal history category was level four. The total offense level for Stone was thirty five. PSR ¶ 29. The advisory guideline range of imprisonment was calculated at 235 to 293 months imprisonment. PSR ¶ 109. In essence, counsel negotiated for the dismissal of Count Four which resulted in a lesser term of imprisonment. Further, in

choosing this option, the government agreed to allow Stone to request a below guidelines sentence, and maintain his valuable appellate rights.

## VIII.   AN EVIDENTIARY HEARING IS NOT WARRANTED

As detailed above, Stone's motion, the files, and the records of the case conclusively show that he is not entitled to relief. More specifically, Stone's allegations are "contradicted by the record" and "inherently incredible." *Johnson v. United States*, 2009 WL 278529, *4 (E.D. Mo. 2009) (Sippel, J.) (denying hearing on § 2255 motion for those reasons) (quoting *Delgado*, 162 F.3d at 983)). Therefore, Stone is not entitled to an evidentiary hearing. *Harrell*, 2009 WL 782292 at *2 (quoting 28 U.S.C. § 2255 and citing *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)); *Rodriguez v. United States*, 2009 WL 412970, *1 (E.D. Mo. 2009) (Sippel, J.) (citations omitted); see also *Rogers v. United States*, 1 F.3d 697 (8th Cir. 1993)."Vague and conclusory" allegations alone do not warrant an evidentiary hearing. Id. (quoting *United States v. Robinson*, 64 F.3d 403, 405 (8th Cir. 1995)).

## CONCLUSION

For the foregoing reasons, Stone's § 2255 motion is **DENIED**.

Dated this 23rd day of February, 2012.

_____
STEPHEN N. LIMBAUGH, JR.
UNITED STATES DISTRICT JUDGE